May it please the Court, I'm Matt Keziah speaking on behalf of the appellants. Your Honors, the legislative prayer is unconstitutional if the government uses it to discriminate. Scottsdale manipulated a protectual policy to discriminate against a stigmatized religious minority. If that minority had been Hindus or Jews, none of us would be here today. But because it that you cannot discriminate. Specifically, they said where there's no indication that the prayer policy is being used to proselytize or to disparage, it's no problem. Town of Greece expanded on that and said it has to be non-discriminatory. And the recent American Legion case, it's been on that a little bit more and said these things are constitutional because they are inclusive and they are non-discriminatory. So we know very clearly it has to be non-discriminatory. Well, what happened below? When TSCU was treated the same as everyone else, they had a three to five minute phone call with the scheduling clerk who essentially just asked, who are you and when do you want to be here? But 15,000 emails crashed city servers that were entitled, No Hail Satan Prayer, which the district court found led to the city scheduling clerk, but of the city attorney to find out what have we done in the past. Up to that time, only the scheduling clerk was ever involved in determining who's going to be giving these legislative prayers. In the interim, we know that also the mayor posted several public statements all to the effect of, we don't like them because they're Satanists. He said, we, the city of Scottsdale, are telling the Satanists, hell no. We are sending this issue to the public. Mr. Keziah, the trial court conducted a trial in this case, made a variety of factual findings, including issues of credibility. So I understand you and your client feel that you've been treated badly because of the orientation and the Satanic temple, but the findings of fact of the trial court are not consistent with that conclusion. Don't we give deference to those factual determinations? Not in a constitutional case, your honor. I cited in the reply brief, city of Houston versus Hill, that's 42 U.S. 451. Supreme court says an independent review of the record is appropriate where the activity in question is arguably protected by the constitution. That includes not just straight questions of law, but intermix questions of law and fact. We're talking about the constitution here. The judiciary's obligation as the reviewing court is to make sure that the first amendment is properly applied. That's not just looking at the black letter law of town of Greece and et cetera. It's more than that. It's looking at the record and seeing, is this correct or is it not correct? Counsel, that would be easier to do, forgive me, because your briefing talks about having assembled an exhibit to demonstrate that in fact, in the past, the city had invited a lot of other groups from outside its immediate area, right? But I think that exhibit was never admitted at trial. Is that right? Sort of, your honor. We asked about various other instances where people were allowed to come in from outside of Scottsdale and that was all admitted. It was uncontroverted below that people were coming in from Tempe, people were coming- Wait, wait, wait, wait, wait. You're losing me. I'm sorry. But there's an exhibit, a specified exhibit that's the answer to my question is sort of? Was it admitted? The exhibit was not admitted. The exhibit summarizing all of the instances were not admitted. However, the evidence still got in, that people still came in from outside the city of Scottsdale. And part of this is- Well, the evidence that I know of, because this is an important point for the reason you just explained. When we look at this, as Chief Judge Lynn said, we've got these findings of fact about the city manager and credibility and whatnot. So, if there was contrary evidence, we need to know it. And my understanding is that the contrary evidence indicated that groups from outside were groups where folks who are citizens from Scottsdale were either in attendance at that school or participated in those groups and that's why they were invited. Is there some other example that's actually in the record that we should be considering here? Yes, your honor. One of the big ones that the district court paid attention to was entitled Phoenix Indian Community Center. I believe it was Phoenix Indian Center. Clearly, this thing is from Phoenix. It's not from Scottsdale. That was a big one that caught the judge's mind. I remember that we had, I want to say it was Keister and Biesenmeier both testified to at least two instances. I remember Paradise Valley and Tempe. And I can find the court citations for rebuttal time. Does that resolve the court's question? Well, I think you're getting at what, getting there. Because we do have these findings of fact after a trial. And so are you wanting us to decide that based upon this evidence that you're pointing to, setting aside the exhibit, which wasn't admitted, but looking at the evidence in the record, should we find that there's these, this finding is clearly erroneous regarding credibility? Credibility isn't the issue, your honor. Churchill Okumibabu Ai. Well, this is the decision maker though, right? This is the credibility of the decision maker who said this is why he did what he did. Yes. So it What you're missing is Churchill Okumibabu Ai says this is an objective test. It is not a subjective test. We do not take the decision maker at their word and say, I'm not a bigot. And then that's the end of the day. Instead, we look to everything, importantly to include the historical decision, historical background of the decision under pressure. The historical background. Right, that's why I'm trying to get at what else was in the record. I don't, I'm not going to fight with you on that point. I'm just trying to figure out what else is that we, that we can fairly consider. Well, the testimony I feel was pretty clear that there were many instances of people coming in from outside the city of Scottsdale. I think that minimally we have two. So if the, if the threshold inquiry is one, we have that, we have all of the meeting minutes that summarize, here's where people are coming from. We have the attachment to the amended complaint that had 55 instances of people coming in from outside of the city of Scottsdale. And it was even admitted. Initially, the threshold was, are you from inside the city of Scottsdale? But come trial time, it was, well, you didn't have to be inside the city of Scottsdale. Beesemeyer testified of this. You don't have to be inside the city of Scottsdale. We're just looking for a following. We need at least three people and a physical location somewhere in the Phoenix metro area. That's wrong by itself. That is, even taking that as true, that doesn't, that doesn't address the pretext issue, but taking that as true, we have a separate issue with that. I see the court's about to ask me a question. No, you said that's wrong. And I'm waiting to hear why that's wrong. The reason why that's wrong is because you're measuring how big is the religion. If you are measuring the threshold of how many followers do you have? Do you have enough money to have a location? That is measuring how big, how much political clout do you have? You can't do that. Barnett teaches us that constitutional rights are not subject to a vote. This isn't something where you need to have at least three people before you get your equal rights. The question is, is it discriminatory or is it not discriminatory? And the reason why- My understanding is that the legislative body decided that they wanted to have this type of an invocation, right? Which is not unusual. And that they were looking for a cross section of views represented in their community. Is the problem, you think, that they were looking for a critical mass that was too large? Something prevents them from adopting this policy? Or is your argument really that they didn't follow their own policy? The argument is there was no real policy. It was an all commerce system up until the time that it became a political issue that a politically maligned minority wanted in too. Then they backwards engineered a protectual policy. Mr. Kozhaba, it sounds like you're discussing the merits here, or a challenge to the policy. Is that correct? Well, the inquiry under Town of Greece and Marsh is, how are people selected? Are we selecting people to promote a particular religion, which is what most of these cases are? I know, but it seems like you're arguing that the policy was discriminatory. Is that what you're arguing to us right now? That is the core issue. But that core issue that you are now arguing that you've argued in your briefs seems to be waived. So can you address the waiver, how you didn't waive it? You never presented this squarely below. And I don't think you, you know, there's some things that you didn't even raise on your brief here to the court. So I mean, there's kind of like a double waiver going on here. Tell me how we're able to look at this. Because in my view, a lot of these have been waived. Your Honor, we briefed all of these issues at length in the summary judgment motion. At the pre-trial hearing, the judge said, I understand all these issues. And at SCR 116, he says, if there's a tough legal issue on which we need briefing, we'll do it after the trial. We have been arguing consistently throughout this whole thing. That doesn't make any sense to me. I'm not sure. I mean, if you were going to raise something during trial, you need to raise it during trial. And it seems like you challenged us to the substantial connection policy, which you seem to be discussing. And anything, you know, the policy that disparages the plaintiff's religions, the enact of the policy. I mean, I think the district court went over pretty carefully, you know, in the final pre-trial order, what was going to be at issue here. And you had ample opportunity to squarely raise these. And it appears to me that you didn't. But I want to give you an opportunity to argue why these aren't waived. Our whole closing argument is that this is a pretext. Our whole closing argument is look at all these various instances where people were coming in from outside the city of Scottsdale, even though at the outset, that was allegedly the threshold. But then it changed. And we pointed that out. And then and to be clear, it changed to there was only one instance. It was the Jesuits. But then it changed again at trial. Originally, it was, OK, well, you have to have a following. This was the court testified. We did have a following. And so Beesmeyer testified, well, you need to have at least three people and a physical location. It kept moving on us. And we pointed that out in the summary judgment, although at the time they didn't have the the at least three people part. We pointed it out in the closing argument. We pointed it out in the post-trial briefing, which the district court even invited by saying, if we have any tough legal issues, we can do it after the trial. The district court's position is, well, this is just a circumstantial case. The problem with that is Churchill-Kumi-Babu-Wai. You have to look at it, both the direct and the circumstantial. Rubin and Marsh and actually also Tana Greese all stand for the proposition that we're looking for a showing. They all say it in the negative because each of those three were, well, there is no showing. There's no indication in the exact language of these three courts. I see the court's about to ask a question. Well, I just I'm looking at this. Looks like you initially litigated the case as specific instance discrimination and that you are arguing that the city's denial of your request gave to give the invocation was biased, from what I can tell, on hostility towards your plaintiff's religion. And then it looks like the district court determined that the arguments that you raised for the first time after trial, including all these challenges to the city's policy requiring invocation givers to have a substantial connection to Scottsdale were waived because these arguments were not included in the final pretrial order. And so I don't know that that's how I understood what was going on. So I'm not quite sure how this isn't waived because the pretrial order controls the course of action unless it's modified at trial. And so I don't see how this isn't waived. We addressed it repeatedly in the pretrial order. We said it at least three times that this is a protectual policy. All of this substantial connection business is just a pretext to cover up the fact that really the reason why they said no to the Satanic Temple is because they thought the Satanic Temple was a sideshow and they thought this was in the pretrial order. Well, it seems that the pretext argument is not about the policy being discriminatory, but that the city was hiding behind the policy to discriminate in this one instance. I'm not quite sure I'm following you. The issue is that the policy is a pretext. In reality, it was an all commerce system, but it didn't. It was not an all commerce system when it was a political issue. That's what the problem is. The policy itself is a pretext. The reality is that all of these public statements show they didn't want the Satanic Temple because the Satanic Temple is politically maligned. That was maybe it would be helpful. Forgive me. Maybe it'd be helpful. There's there's no there was no written policy. Right. So when you're calling a policy, I Is that what you mean? It has been an all commerce practice. And then when your group came along, I think your contention is that then the city came up with what you consider to be a pretextual policy that excluded your group. Is that fair? If we're using policy and practice to keep it consistent, their position was that we've always done it this way. We've always required someone to have a substantial connection. That's why we can't bring it up. That's what I mean by practice. Yes. Yes, Your Honor. Yes. Did that answer your question? I think so, but it just gets me back to what I've been struggling with, which is why I was trying to pin you down. What what is your argument here today? Because I read that it seemed to me that the district court in this case took went to lengths to say, here's the pre-trial order. Here's what you're going to be limited to. If you're what you're saying in response to Judge McGee is that the city veered off course and they raised that it was mercury, a moving target, then I think you'd have to at least have objected at trial and say to raise the issue that they're that they're the ones, you know, hiding the ball or shifting. And did that happen? We didn't object because we thought it was more clear evidence that this is a pretext. If the definition of this thing keeps changing over time, how is that not clear that they are changing the definition for the unique purpose of excluding the Stank Temple? Keiser testified no one had ever been excluded in the past and up to the time of trial, which was about four years after the fact, no one has been excluded since only one group has ever been excluded. Only one group or their public statements that we don't like them. We want to keep them out because they're a sideshow or et cetera. There are multiple public statements. But the attachment to your complaint, I think, is the exhibit wound up being the proffered exhibit or at least numbered exhibit that I was referring to earlier, if I'm not mistaken. Was it was it, in fact, offered and excluded at trial or was it not offered for admission? Yes, to both. It was well, it's substantially similar. The one that was attached to the complaint had about fifty five instances. It was partial. The one that we tried to introduce at trial had one hundred and one instances. It was excluded. It was excluded. Yes. OK, thank you. Is it your position, then, that you win on the substantial connection being a pretext as a matter of law? We win because the legal error is that the judge contorted what is supposed to be an objective test into a subjective test. We win because the district court consciously disregarded all these public statements and said, I find that the fact that this guy says he's not a bigot outweighs all these other bigoted things that the city said. That's why we win. Isn't that what a trial is for, for someone to sort through the facts and determine which facts are reliable? Isn't that what he did? That's weighing of evidence, Your Honor. Weighing of evidence is one thing, but to disregard relevant evidence is a legal error. That's under Church of Lukumi Bapu'u'i. Thank you very much. I went a little bit over time with you, but I'll give you a minute or two for rebuttal. Thank you, Your Honors. Mr. Klaus? Yes, Your Honor. Thank you. I had to unmute myself. May it please the court, Scott Klaus at Dickinson Wright on behalf of the city of Scottsdale. May it please the court, I want to start with the question that Judge Murgia asked because it is critical to the court's weighing of the arguments presented today. It is not just that the appellants waived the issues that populate their argument today and populate the majority of the arguments in their opening brief by failing to include those issues in the joint pretrial statement. But the district court made a specific finding of waiver in the rejection of their Rule 59 motion. The plaintiffs slash appellants never framed that argument in their opening brief. So as we pointed out, in no shortage of irony, they have waived the ability to challenge the waiver argument. I think that is a good contextual framework in which to put my argument, Your Honor, because the court is correct. This case went to trial, and we know this from ER 723, based upon plaintiff's assertion that a single defendant, the city of Scottsdale, engaged in a specific instance of discrimination. And because the city of Scottsdale is the only defendant to establish liability pursuant to the law, the plaintiff was required to prove that the decision maker for the city was motivated by a discriminatory intent. The undisputed evidence in this case is that the acting city manager, Brian Biesmeier, was the only official at the city of Scottsdale imbued with the authority to make the decision to disinvite the plaintiffs from giving an invocation in this matter. Scottsdale is a charter city. This seems to evade the understanding of the plaintiffs in their briefs and in their argument today. Their construct for a municipality comes, it seems, from a DC comic universe where the mayor of Gotham City or the mayor of Metropolis has some all-encompassing plenary power and just needs to simply shine a light in the sky and effectuate the mayor's wishes. But that's not how the city of Scottsdale works. The charter for the city of Scottsdale is its organic document, much like a constitution. And Article 3, Section 2 of the Scottsdale City Charter is categorical and clear. Brian Biesmeier, as the city manager, was the chief executive of the administrative branch of the Scottsdale city government. That's why the mayor, when being questioned by counsel, counsel with an S, explained that the Scottsdale form of government, much like other municipal governments in Arizona that have a charter form of government with a city manager, is referred to as a council manager form of government. And that's at ER 329 and 330. Neither the mayor nor the city council can direct the decisions made by the city manager. And the undisputed evidence in this case from the city manager, from the mayor, and from the only council person called by the plaintiffs to testify, Councilwoman Clapp, all are clear and consistent that the mayor and the council did not influence the decision of the city manager. So, yes, yes. Mr. Klaus, it seems like Mr. Kizhava keeps pointing us to Church of Lukumai. Can you tell us why we should or shouldn't be looking at Church of Lukumai? If it's OK with the court, may I refer to that as the Hialeah case, just because it's easier to get that out of my mouth? The Hialeah case is not an establishment clause case. First of all, the Hialeah case was a free exercise case. The Hialeah case wasn't a legislative prayer case. The Hialeah case involved the city of Hialeah passing an ordinance specifically to prescribe animal sacrifice. And in the municipal legislation, the ordinances and resolutions that were passed targeted the specific practice of the Santeria religion. And so Hialeah has no application to this case because in Hialeah, first of all, it wasn't an establishment clause case. It was a free exercise case. It wasn't a legislative prayer case. But in Hialeah, the city council was the decision maker. And therefore, I believe it's in footnote two, Your Honor. I believe in Hialeah, the court noted the appropriateness at looking at the contemporaneous statements made by the decision makers to determine the intent of the decision makers. So we have a legal distinction between Hialeah and this case, but an important factual decision. The mayor and the council individually and as a body made no decision in this case that impacted the rights or the ability of the plaintiffs to do a single thing. Counsel, you've briefed this point at length, and we understand the evidence about who the decision maker was. An opposing party's argument is that there wasn't really a policy. There's sort of a practice. And that when the at least acting city manager needed to make this decision, he consulted with the city attorney and their position is, then everything changed. And whether you want to call it a policy or practice, things changed. And what he's really arguing, I think, is pretext. I think there's a serious waiver problem here, but this is an allegation that they were discriminated against. And so maybe it's fortunate that you don't have to justify some of the other statements that were made by other folks who weren't the decision makers, if we take the evidence as you offer it here. But could you engage please in what he's arguing vis-a-vis the evidence of pretext? Yes, Your Honor. The fundamental problem with that assertion is that it is simply not tethered to reality. And it is rebutted by the categorical evidence in this case. Sorry, which assertions? What assertion are you referring to? The assertion that, quote, everything changed, end quote. The unrebutted testimony in this case is that until Jeremy Zarzicchi called Ms. Keister, the assistant manager for the mayor and council, no, zero organization had ever contacted Ms. Keister or to her knowledge, her predecessor, to ask to give an invocation. Instead, as Ms. Keister testified, categorically, it's pages 192 of the excerpts of record. That's what he argued, that it was an all commerce policy or practice anyway. That's what he's arguing, at least today. And that is wrong as a matter of historical fact. Ms. Keister testified that the practice of the invocations before the city council meetings were as a result of what she called an email blast. She maintained a list of organizations that did have a substantial connection to the city of Scottsdale. And for each municipal session that was going to have open dates, she sent out an email to the entities on her list to tell them- But she also, I think, explained that she doesn't really know where the list came from, she inherited the list. She wasn't in the business of adding names to the list or taking, somebody compiled the list at some point, right? That is also inaccurate, Your Honor. No, she testified clearly that she did add names to the list. In fact- Well, in response to what, I think, I think not. I think she testified just the opposite, but- No, Your Honor. On questioning from Mr. Clore, she testified that all of the typewritten pages of the list were her work product. She testified that when individuals who would meet council members and give them their business card and say, we have a presence in the city of Scottsdale and we would like to add our names to the list, she added those names to the list. She did not- I have a different citation here, but that's, I'm going to take you down a tangent if we go there. So let's not, the opposing council argues that they called, as you know, twice, they put on the list, then they had to reschedule. I'm not, what happened to you? Are you there? I'm sorry. I just was going to get- And they weren't able to get their name on the list. But again, that is factually inaccurate. The only evidence in trial was that one phone call was made by Jeremy Zarzycki. When Jeremy Zarzycki made the phone call to Ms. Keister, the group that he purported to represent was scheduled for an April invocation. When Mr. Zarzycki never called again, no one from any plaintiff ever contacted the city again by phone or in person, Mr. Zarzycki sent an email that said, we can't make the April date. Is there another date available? Ms. Keister replied by email saying that July 6th is available. Are you drawing some distinction between the phone call and the email? Why is that significant? No, am I missing something there? Well, I simply wanted to point out that the premise of your question was that they had contacted the city numerous times trying to get on. I said twice, and I think you disagreed twice. Again, I don't want to go into, I'm not trying to trip you up. It's just that that's their contention. They're trying to get on the list. They were on the list. And then their very clear position is that there was this pretextual reason for saying, oh no, here in fact is our policy. And there was, I think it's very clear, no written policy, right? That's their position. So I'm just trying to get your best response, counsel. Sure. My best response is that the trial judge who sat as the finder of fact, who entered findings of fact and conclusions of law, and who judged the credibility of the witnesses, decided that there was no pretext. After the plaintiffs were scheduled for the July 2016 date, Mr. Biesmeier contacted the city's attorney's office, determined that the longstanding practice of the city of Scottsdale was to only invite organizations that had a substantial connection to the city of Scottsdale to give an invocation. And so instructed Ms. Keister to inform Mr. Zarzycki that the plaintiffs would not be permitted to give an invocation because of that policy. The court credited Mr. Biesmeier's credibility three separate times. So what is your response to opposing, we spent a lot of minutes on this now, but I'm just trying to get, what is your response to opposing counsel's contention that there was, even though the exhibit wasn't admitted, that there was other evidence of other groups from outside Scottsdale being invited, please. What is your best response? Sure. The best response is that that's not supported by the record. Your Honor, Mr. Keisyer referenced exhibit 14, which purport to comprise the meeting minutes. At ER 408, the judge specifically determined that he would not consider exhibit 14 for any purpose other than determining if Mr. Smith was a council member. So the appellant's reliance on exhibit 14 to establish other religions outside of the city of Scottsdale being permitted to give invocations is not something that was presented to the trial court. It was excluded by the trial court and it hasn't been challenged in the opening brief on appeal. Secondly, there is one reference in the testimony to Brophy Preparatory Academy. That is the only reference in the testimony to an organization not located within the boundaries of the city of Scottsdale giving an invocation. And the explanation by Mr. Biesmeier is clear on direct. It is clear on cross that that was permitted. That invitation was made to the head chaplain of Brophy Preparatory Academy because the number of children and parents located within Scottsdale, whose children go to Brophy Preparatory Academy. I do want to address counsel's citation to city of Houston for this proposition that the court can somehow set aside or substitute the credibility findings of the district court with its own. That notion, A, is not supported. He's, I think, citing footnote six of city of Houston. That argument is not supported by city of Houston. More importantly, it is absolutely undermined by the Supreme Court's decision in city of Bessemer, a discrimination case where the court said when a judge credits the internally consistent testimony of a witness, that finding can virtually never be clear error. When findings are based on determinations regarding credibility, rule 52A demands great deference to the trial court's findings. For only the trial judge can be aware of the variations in demeanor and the tone of voice that bears so heavily on a listener's understanding of and belief in what is said, Preet versus Bradbury, a decision from the ninth circuit, 2006, a first amendment case, recapitulates that notion and stands for the proposition that even if, and this court re articulated this just last year in city of Oakland, even if the court, even if this panel would reach a different decision based upon the evidence presented to the trial court, that is not enough and that does not establish clear error to set aside the trial judge's findings of fact and conclusions of law because the finding of fact was that Mr. Biesmeier was the decision maker. He was credible and he did not make a decision based upon any discriminatory animus. The plaintiff's claims were justifiably denied by the trial court. And that decision should be affirmed today. Thank you, Mr. Klaus. Thank you. Mr. Kuzma, I'll give you a minute for rebuttal. Thank you, your honors. And may it please the court, briefly to address waiver issues one, two, and three, repeatedly, we said, this is a pretext they discriminate against us because of our religious beliefs. And because more importantly, they didn't like our religious beliefs, particularly our issue on three, our response. That's ER 715 and 716, importantly. As to Tempe, I promised citations for that, ER 414 through 416 and 546 repeatedly testified, yeah, people were coming in from Tempe. Paradise Valley, ER 137, people testified that people were coming in from Paradise Valley. Phoenix Indian Center, that's ER 638. The people came in from Phoenix to give this prayer. As to the charter, all powers of the city are vested in the council. All powers, article one, section two. They then delegate some of those powers to the city manager. And even if the city manager didn't have that power, Chiu versus Gates teaches us that you can't just delegate these powers to non-policy making people. Church of Kumi Bablui, that is looking to an establishment clause case. They say, Justice Harlan noted the related context of the establishment clause, neutrality requires an equal protection mode of analysis. These are in a fast forward. These objective factors bear on the question of discriminatory intent. Unless the court has further questions. Before you close, Mr. Keziah, I've looked at those, re-looked at those references at the trial. And I was refreshing my recollection that the trial court said the information that was provided about where those various entities were located did not provide the timeframe when those addresses were in effect, and the judge said that was fair for cross-examination. So he didn't have to credit your view that all of those organizations that spoke were located in those locales at the time that they gave their prayer. Isn't that true? That's correct, Your Honor, but it doesn't upend the fact that we have people from Tempe, Paradise Valley, Phoenix Indian Center, the city's position at motion dismiss stages, you had to be inside of Scottsdale. Then come deposition time, it was, there was only one instance, and it was the Jesuits and they were right outside of Scottsdale. These three instances, at least three instances, prove people were coming in from outside of Scottsdale. That means they're- And if they were, counsel, if they were, and maybe the city manager was mistaken in his understanding of the policy or what I'm calling the historic practice, but how does that get you to clear error regarding the credibility of the witness, of the decision maker? Because- You've got to show discriminatory intent. Sorry. Churchill Akumi Babu-Aye answers, how do we evaluate discrimination? The verbatim of it is at two, this is 113 Supreme Court 2230 to 2231. That's at that number two. They start out by saying, we look at this, like the equal protection, and they reference Establishment Clause jurisprudence. This court in an Establishment Clause equal protection case, which this one is in Washington versus Trump, did the exact same thing. Facial neutrality is not determinative. That's all they have going for them. They did something that was facially neutral, but when you peer behind it by looking to these factors, not least of which includes the historical background, when you look at all of these other factors objectively, quote, these objective factors bear on the question of discriminatory object, that gets us past there, and even better, this is a discrimination case, and they even said they didn't consider these, the District Court and the Court of Appeals did not consider these factors. That is clear error. So it was clear error. Let me just, in the church of Luke, my case, even if it's relevant here in light of the claims being made, the city council members who made the statements were made by the city council members who actually made the policy. Here, the decision maker was Mr. Vessemeyer, and why isn't that significant? Because in Church of Likumi Babu Wai, they didn't only consider the council members' statements. They also point to, well, there was this sheriff who came in and they gave this bigoted testimony, and they rely on that as a historical background. There was, I want to say at least one other person who wasn't the decision maker voting on. There, they weren't policies. Those were actually city statutes, but it's the same thing. So they look to these people who did not actually vote on these things because Mr. Claus is right, contemporaneous statements made by members of the decision-making body is a thing that the District Court can look at, but it's not the only thing. This is not a subjective test as the District Court did. It's an objective test. So that's where the error is. He consciously disregarded these objective factors. Thank you very much, and appreciate your arguments here today, Mr. Keziah and Mr. Claus. The case of Satanic Temple, let me just double check, Judge Kristin or Judge Lynn, do you have any other questions? No, no, thank you. The case of Satanic Temple versus City of Scottsdale is now submitted.
judges: Murguia, Christen, Lynn